IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HOWARD KYLE SUMMERALL,
     Plaintiff,

vs.                           Case No.: 3:16cv455/RV/EMT

SERGEANT QUINN, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Howard Kyle Summerall ("Summerall"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Presently before the court is Defendants' motion for summary judgment, with supporting evidentiary materials (ECF No. 25). Summerall has not filed a response to the motion.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Defendants' motion for summary judgment should be granted.

I.      BACKGROUND AND INTRODUCTION

At all times relevant to this action, Summerall was incarcerated at Santa Rosa Correctional Institution (*see* Second Amended Complaint, ECF No. 8 at 5–7).[1] Defendants Sergeant Quinn, Officer Gent, and Sergeant Pugh were members of the security staff at Santa Rosa C.I. (*see id.*). Summerall claims Defendants used excessive force while extracting him from his cell on April 13, 2016, in violation of the Eighth Amendment and FDOC policy (*id.* at 5–9). Summerall claims he suffered a wound to his hand and humiliation as a result of Defendants' conduct (*see id.* at 7). Summerall seek nominal, compensatory, and punitive damages (*id.* at 8).

Defendants contend Summerall's allegations fail to state a plausible Eighth Amendment violation, and for this reason, they are entitled to qualified immunity (ECF No. 25 at 9–15). They also contend Summerall's claims that they violated FDOC policy are not actionable under § 1983 (*id.* at 16). Defendants contend they are entitled to Eleventh Amendment immunity to the extent Summerall sues them in their official capacities (*id.* at 15–16). And they contend Summerall is precluded from recovering compensatory and punitive damages against them in their individual capacities, pursuant to 42 U.S.C. § 1997e(e) (*id.* at 5–9).

II.   LEGAL STANDARDS

---

[1] The page numbers referenced in this Report and Recommendation are the page numbers automatically assigned by the court's electronic filing system, rather than those of the original documents.

A.     <u>Summary Judgment</u>

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005).

"A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.   The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

. . . .

> **(4) Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).

Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show that a fact is genuinely disputed.  "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial."  Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012) (citing Pritchard v. S. Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996)).  If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment.  *See* Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999); *see* Fed. R. Civ. P. 56(c).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the moving party's motion and supporting

materials—including the facts considered undisputed—show that the moving party is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.    Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary acts "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing Harlow, 457 U.S. at 818).

"Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).  To be entitled to qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. (internal quotation marks and citations omitted).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194.  "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." Tolan v. Cotton, — U.S. —, 134 S. Ct. 1861, 1865, 188 L. Ed. 2d 895 (2014).  "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right. . . .  The second . . . asks whether the right

in question was 'clearly established' at the time of the violation." *Id.*, 134 S. Ct. at 1865–66 (citations, internal quotation marks, and alterations omitted) (first ellipsis in original). The court has discretion to decide which question to address first. *See* Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Qualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights. *See* Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citations and quotation marks omitted). The defense gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al–Kidd, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). In part, this defense recognizes the problems that government officials like correctional officers face in performing their jobs in dynamic and sometimes perilous situations. It is also designed to avoid excessive disruption of government services and to provide a direct way to end insubstantial claims on summary judgment. *Id.*

The clearly established law requirement provides government officials with the ability to anticipate what conduct will give rise to liability for a constitutional violation. *See* Anderson v. Creighton, 483 U.S. 635, 646, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). To that end, when officials are acting within their discretionary

capacity, they "can know that they will not be held personally liable as long as their actions are reasonable in light of current American law." *Id.* "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Al-Kidd, 563 U.S. at 741 (quoting Anderson, 483 U.S. at 640) (emphasis added). This imposes an objective standard, and that objective standard is "measured by reference to clearly established law." Harlow, 457 U.S. at 818.

Because this objective standard is fundamental to the qualified immunity defense, the district court, in ruling on a motion for summary judgment, should determine if the law was clearly established at the time the incident occurred. As the Supreme Court explained:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

Harlow, 457 U.S. at 818–19. In this way, both government officials and citizens are protected. If the law is not clearly established, then the court should dismiss the case against the government official. If the law was clearly established, then the claim

against the government official should go forward, and summary judgment should be denied.

Authoritative judicial decisions may "establish broad principles of law" that are clearly applicable to the conduct at issue, and it may also be obvious from "explicit statutory or constitutional statements" that certain conduct is unconstitutional. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1209 (11th Cir. 2007); *see also* Taylor v. Barkes, — U.S. —, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) ("We do not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate."). Furthermore, recognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider the law "in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). In other words, the facts of the case before the court must be materially similar to the facts in the precedent that clearly establishes the deprivation. *See* Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir. 2015) (citation omitted). To be clearly established, the precedent must give officials clear warning of unconstitutional conduct. *Id.*

In considering the law to do this analysis, the district court should compare the facts of the case before the court that allege a constitutional deprivation with those

cases that the party opposing the motion contends show the clearly established nature of the law.  As the Eleventh Circuit has explained:

> For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing the official might make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent.  Thus, every fact need not be identical.  Minor variations in some facts (the precedent lacks arguably significant fact or contains an additional arguably significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing an official materially different than the pre-existing precedents, leaving the law applicable—in the circumstances facing the official—not clearly established when the defendant acted.

Merricks, 785 F.3d at 559 (internal quotation marks omitted).

Earlier this year, the Supreme Court observed:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases.  The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.
>
> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined at a high level of generality.  As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case.  Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

White v. Pauly, — U.S. —, 137 S. Ct. 548, 551–52, 196 L. Ed. 2d 463 (2017)

(multiple citations, some quotation marks, and alterations omitted).

The court cannot consider just any case law to decide if a right was clearly

established. Only binding opinions from the United States Supreme Court, the

Eleventh Circuit Court of Appeals, and the highest court in the state where the action

is filed, can serve as precedent for this analysis. *See* McClish v. Nugent, 483 F.3d

1231, 1237 (11th Cir. 2007).

C.       Eighth Amendment Excessive Force Claims

Claims of excessive force by prison officials fall under the Eighth

Amendment's proscription against cruel and unusual punishment. The "core judicial

inquiry" in considering an excessive force claim is "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156

(1992); *see also* Whitley v. Albers, 475 U.S. 312, 319–321, 106 S. Ct. 1078, 89 L. Ed.

2d 251 (1986). "When prison officials maliciously and sadistically use force to cause

harm," the Court recognized, "contemporary standards of decency always are violated

. . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9.

This is not to say that the "absence of serious injury" is irrelevant to the Eighth

Amendment inquiry. Hudson, 503 U.S. at 7. "[T]he extent of injury suffered by an

inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting <u>Whitley</u>, 475 U.S. at 321). The extent of injury may also provide some indication of the amount of force applied. *See* <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010). As the Court stated in <u>Hudson</u>, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* (internal quotation marks omitted).

"Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting <u>Whitley</u>, 475 U.S. at 320–21). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including these five: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat

to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson, 503 U.S. at 7–8; *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson, 481 F.2d at 1033). In cases in which a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force. Skrtich, 280 F.3d at 1302.

The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added).

III.   MATERIAL FACTS

As this case comes before the court on Defendants' motion for summary judgment, the court is required to view the facts in the light most favorable to Summerall, the nonmoving party. *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993); *see also* Iqbal, 556 U.S. at 679. The court does so here, referring to Summerall's verified Second Amended Complaint (ECF No. 8) and taking those facts from the parties' pleadings and summary judgment materials of record. *See* Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to summary judgment); Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1(B), (C), (F). Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

On April 13, 2016, at approximately 12:15–12:30 a.m., Sergeant Quinn came to Summerall's cell while making routine security rounds (Second Amended Complaint at 5). Summerall had covered the window of his cell with a piece of paper to have privacy while he used the toilet (*id.*). Sergeant Quinn ordered Summerall to remove the paper from the window (*id.*). Summerall stated that he was on the toilet, but Quinn did not hear the response (Second Amended Complaint at 5; Declaration of Ronnie M. Quinn ¶ 2, ECF No. 25-2). Sergeant Quinn and Officer Gent whispered

to each other, and moments later, Quinn beat on the cell door stating, "Inmate Summerall respond and uncover your window" (Second Amended Complaint at 5). Summerall stated, "I'm shitting!" but, again, Sergeant Quinn did not hear the response (Second Amended Complaint at 5; Quinn Decl. ¶ 2). Officer Gent obtained a non-electric, concave, Plexiglass shield to open the handcuffing portal of Summerall's cell door (Second Amended Complaint at 5; *see also* Quinn Decl. ¶ 3). Sergeant Quinn looked into the cell through the opened handcuffing portal and said he could not see Summerall (Second Amended Complaint at 5). Summerall alleges he was still using the toilet at the time, and while doing so, he waved his hands in front of the portal, "look[ed] Sergeant Quinn in his face," and said "I'm good" (Second Amended Complaint at 5–6). Sergeant Quinn advised Sergeant Pugh, the dormitory supervisor, that one of the inmates in the dormitory was unresponsive (Second Amended Complaint at 5–6; Quinn Decl. ¶ 3). Sergeant Pugh came to Summerall's cell and asked Summerall to respond (Second Amended Complaint at 6). Summerall alleges he stated, "What the fuck, can I shit in peace?" (*id.*). Sergeant Pugh then told Summerall that if he did not respond, the officers would perform a "Life Safety Check" (Second Amended Complaint at 6; *see also* Quinn Decl. ¶ 3). Because the cell window was covered, Sergeant Quinn did not know if Summerall was committing a violation of FDOC rules (Quinn Decl. ¶ 3). Summerall finished using the toilet and

flushed it (Second Amended Complaint at 6). As Summerall began to remove the paper from his cell window, Sergeant Pugh rushed into the cell with the Plexiglass shield, followed by Sergeant Quinn and Officer Gent (Second Amended Complaint at 6; Quinn Decl. ¶ 3). Upon entering the cell, Sergeant Quinn observed Summerall stand up from the floor of his cell (Quinn Decl. ¶ 3). Sergeant Quinn states Summerall ran to the back of the cell, but Summerall states Sergeant Pugh pushed him to the back of the cell with the shield (Second Amended Complaint at 6). Sergeant Quinn punched Summerall in the side of the head/face (*id.*). Summerall became compliant, so Sergeant Pugh moved the shield off Summerall to allow him to lie on the floor (Second Amended Complaint at 6; Quinn Decl. ¶ 4). Summerall then ran toward the open cell door "with my hands and arms to protect my face" (Second Amended Complaint at 6; Quinn Decl. ¶ 5). Summerall grabbed the cell door handle and door frame and pulled his head out of the cell (Second Amended Complaint at 6). Sergeant Pugh grabbed Summerall's waist and placed him on the ground in the prone position (Quinn Decl. ¶ 5). Sergeant Pugh, Sergeant Quinn, and Officer Gent kicked and punched Summerall (Second Amended Complaint at 6). Summerall balled himself into the fetal position (*id.*). Captain Burch arrived at the dormitory and called for a handheld video camera to be brought to the cell (Second Amended Complaint at 7). Sergeant Quinn applied pressure to Summerall's neck and behind his ear as

another officer ground something into the palm of Summerall's hand (*id.*). Sergeant Quinn and Officer Gent obtained a hold on Summerall's extremities and placed him into restraints (Quinn Decl. ¶ 5). Summerall was escorted to the medical department and examined by a nurse (Second Amended Complaint at 7). Summerall had a small, bleeding scratch on his right palm, which was photographed by Captain Burch (*id.*). Summerall denied that he had any other injuries (*see* FDOC Emergency Room Record; ECF No. 25-1 at 5). A nurse cleaned the wound on Summerall's palm, and Summerall was returned to his cell (Second Amended Complaint at 7).

## IV. DISCUSSION

### A. Eighth Amendment Claims

Summerall claims that Defendants violated his Eighth Amendment rights by using excessive force during the "Life Safety Check." Defendants argue only the first prong of the qualified immunity analysis, i.e., that Summerall's allegations fail to state an Eighth Amendment violation (ECF No. 25 at 9–15). Defendants do not argue that the alleged constitutional violation was not "clearly established" under the second prong of the qualified immunity analysis. Accordingly, resolution of Defendants' motion for summary judgment turns on whether the evidence, viewed in the light most favorable to Summerall, will support a reliable inference that the officers engaged in

a wanton infliction of pain instead of a good faith effort to restore discipline and security.

Because Summerall does not dispute that Defendants were acting within the scope of their discretionary authority, the burden shifts to Summerall to show that qualified immunity is not appropriate.  *See* <u>Lee</u>, 284 F.3d at 1194.  As previously discussed, the following factors must be considered in determining whether Defendants' application of force was applied maliciously and sadistically to cause harm, as opposed to in a good faith effort to maintain or restore discipline:  (1) the need for the application of force, (2), the relationship between that need and the amount of force used, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials, (4) the extent of injury, and (5) any efforts made to temper the severity of the response.

Summerall appears to claim that the officers' forceful entry into his cell to conduct the Life Safety Check was excessive, because he was verbally responsive each time the officers ordered him to respond.  Although Summerall alleges in his Second Amended Complaint that he verbally responded to the officers' multiple orders to respond, Sergeant Quinn submitted a declaration stating he was at Summerall's cell the whole time, and never heard a response from Summerall. Summerall could have submitted evidence detailing the audibility of his alleged

responses to the officers, but he did not.  In the absence of such evidence, Summerall has not shown a genuine issue of material fact as to whether the officers heard his alleged responses.

But even if Summerall submitted evidence from which a fact finder could reasonably infer that the officers were aware that Summerall was responsive and unhurt, Summerall does not dispute that at the time the officers decided to enter his cell and began the  process of doing so, he had not complied with the officers' orders to remove the paper covering his cell window.  As Sergeant Quinn stated, the officers were concerned not only about Summerall's safety, but whether he was committing a violation of FDOC rules.   Therefore, Defendants were completely justified in forcefully entering Summerall's cell.  Not knowing what circumstances awaited them in the cell (for example, whether Summerall would attempt to ambush them, or whether Summerall had armed himself), their first priority was to secure Summerall, who was completely unrestrained and moving at the time the officers entered.[2]  The officers entered the cell, Sergeant Pugh pushed Summerall to the back of the cell with the shield, and Sergeant Quinn punched Summerall once in the side of the head/face. Viewing the evidence in the light most favorable to Summerall, no trier of fact could

---

[2] Sergeant Quinn states he saw Summerall rising from the floor.  Summerall states he was removing the paper from the cell window when the officers entered.  Either way, Summerall was not stationary.

reasonably infer that the officers' conduct at this point was sadistic and malicious as opposed to a good-faith effort to observe Summerall, contain him, and restore discipline and security. It is undisputed that after the single punch to the head/face, Summerall appeared compliant, and the officers' use of force ceased. No Eighth Amendment violation occurred up to this point.

Summerall admits that upon the officers' ceasing all force, he ran past them toward the cell door, grabbed the cell door handle and the door frame, and pulled part of his body (his head) out of the cell. Obviously then, the amount of force used to gain Summerall's compliance up to that point had not been sufficient. And Summerall's threat to institutional security was even greater by virtue of the fact that his cell door was open, he was attempting to leave the cell, and he was partially successful in doing so. Sergeant Pugh grabbed Summerall's waist and placed him on the floor in the prone position, and Pugh, Sergeant Quinn, and Officer Gent kicked and punched Summerall as Summerall balled himself into the fetal position. Sergeant Quinn then applied pressure to Summerall's neck and behind his ear as another officer ground something into the palm of Summerall's hand. Sergeant Quinn and Officer Gent were then able to obtain a hold on Summerall's extremities and place him into restraints. The use of force ceased. Summerall's only injury was a bleeding scratch on his right palm.

There is no genuine dispute of material fact concerning whether, when and to what extent Summerall resisted the officers' attempts to secure him. Nor is there a genuine dispute of material fact as to the nature and amount of force the officers used, or the extent of Summerall's injury. Viewing the evidence in the light most favorable to Summerall, the evidence does not support a reliable inference of wantonness in the infliction of pain. The force used was related to a legitimate institutional objective, i.e., to secure Summerall after he resisted the officers' efforts to secure him. The officers were not only permitted, but under these circumstances required, to use some degree of force to prevent Summerall from leaving the cell. Plainly the need for force was high, because Summerall was unrestrained, actively resisting, and attempting to leave his cell. The prior, single punch had not been sufficient to obtain Summerall's compliance; therefore, progression to a greater amount of force was required. The officers used force only during the process of stopping and securing Summerall, and ceased their use of force when they were able to secure Summerall with restraints. The only injury Summerall suffered was a bleeding scratch on his right palm, which does not suggest that the officers were rougher than they needed to be.

Summerall's allegations do not provide any specific details about the officers' actions that could permit a fact finder to distinguish reasonable coercive measures from an excessive use of force. Viewing the evidence in the light most favorable to

Summerall, there is no evidence which would support a reliable inference of wantonness in the unjustified infliction of pain.  Therefore, Defendants are entitled to qualified immunity on Summerall's excessive force claims.

B.    Violations of FDOC Policy

Summerall claims that Defendants' conduct violated not only the Constitution but FDOC administrative policies, specifically, sections 33-208.002(8) and (14) of the Florida Administrative Code (*see* ECF No. 8 at 8).[3]  Section 1983 permits recovery for only deprivations of a person's rights, privileges, or immunities secured by the federal Constitution or federal law.  *See* Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled on other grounds*, Daniels v. Williams,

---

[3] Section 33-208.002(8) provides:

No employee shall willfully or negligently treat an inmate in a cruel or inhuman manner, nor shall profane or abusive language be used in dealing with an inmate or person under the employee's supervision.

Section 33-208.002(14)  provides:

No employee shall apply physical force to the person of an inmate except as provided in Rule 33-602.210, F.A.C., or to any other person under his supervision except as needed and only to the degree that it reasonably appears to be necessary in self-defense, to prevent escape, to prevent injury to a person or damage to property, to quell a disturbance, or when an inmate exhibits physical resistance to a lawful command. When force becomes necessary, a detailed written report shall be made by the employee to the warden who shall have an investigation made and shall approve or disapprove the force used. The employee's report, together with the warden's written approval or disapproval of the force used and his reasons therefore, shall be forwarded and distributed in accordance with Rule 33-602.210, F.A.C.

474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); <u>Duke v. Cleland</u>, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing <u>Parratt</u>).  Violations of a state agency's administrative policy are not actionable under § 1983.  Therefore, Summerall is not entitled to relief on his claims that Defendants violated FDOC policy.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Defendants' motion for summary judgment (ECF No. 25) be **GRANTED**.

2.     That judgment be entered in favor of Defendants.

At Pensacola, Florida, this 6<u>th</u> day of December 2017.


/s/ *Elizabeth M. Timothy*　　　　　　
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

 Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.